FILED

SEP 3 0 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N D I C T M E N T   JUDGE OLIVER |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1 : 2 1   C R   6 9 9 |
| | ) | CASE NO. |
| THOMAS H. HISSONG, | ) | Title 18, United States Code, |
| | ) | Section 1343 |
| Defendant. | ) | |

GENERAL ALLEGATIONS

At all times material and relevant to this Indictment:

A. Defendant and Related Financial Accounts

1.     Defendant THOMAS H. HISSONG resided in the Northern District of Ohio, Eastern Division.

2.     From on or about September 21, 2000 to on or about March 23, 2011, Defendant was registered as a broker for Robert W. Baird & Co. Incorporated.  On or about September 20, 2000, Defendant passed his Series 7 exam – General Securities Representative Examination.  On or about April 19, 2001, Defendant passed his Series 66 exam – Uniform Combined State Law Examination.

3.     Since on or about April 1, 2011, Defendant established a First Merit trustee savings account for E.H. (Defendant's family member) ending in x9955, now a Huntington account ending in x0751 ("Defendant's Account 1").  Since on or about January 9, 2018, Defendant was the sole signatory on the account when he signed a Huntington signature card for this account.

4. Since on or about April 1, 2011, Defendant held a First Merit trustee savings account for M.H. (Defendant's family member) ending in x9314, now a Huntington account ending in x0780 ("Defendant's Account 2"). Since on or about January 9, 2018, Defendant was the sole signatory on the account when he signed a Huntington signature card for this account.

5. Since on or about April 26, 2011, Defendant held a First Merit checking account with A.H. (Defendant's family member) ending in x8936, now a Huntington account ending in x1529. ("Defendant's Account 3"). Since on or about January 9, 2018, Defendant was a signatory on the account when he co-signed a signature card for this account with A.H.

6. Since on or about April 26, 2011, Defendant held a First Merit savings account with A.H. ending in x5650, now a Huntington account ending in x0722 ("Defendant's Account 4"). Since on or about January 9, 2018, Defendant was a signatory on the account when he co-signed a signature card for this account with A.H.

7. Since on or about August 29, 2013, Defendant held a First Merit account ending in x7244, now a Huntington account ending in x9435 ("Defendant's Account 5"), which listed Defendant, A.H., and K.H. (Defendant's family member) as signatories on the account.

8. Since on or about December 18, 2014, Defendant held a First Merit account ending in x3808, now a Huntington account ending in x4401 ("Defendant's Account 6") which listed Defendant and E.H. as signatories on this account.

9. On or about July 16, 2015, Defendant was added as a signatory on the First Merit account ending in x0325 ("Defendant's Account 7"), now a Huntington account ending x5322, for Defendant's business Delta Consulting ("Delta").

10. On or about December 15, 2016, Defendant established a Merrick Bank credit card ending in x3954, now ending in x5779("Defendant's Account 8") which listed Defendant as the sole signatory on the account.

11. Defendant controlled Defendant's Accounts 1, 2, 3, 4, 5, 6, 7, and 8.

B. Investment and Related Financial Accounts

12. In or around April 2013, Plasma Igniter LLC ("PI") was established as an Ohio Domestic For-Profit Limited Liability Company.

13. In or around February 2015, Association Sponsorship Group ("ASG") was established as an Ohio Domestic For-Profit Limited Liability Company.

14. Since on or about December 18, 2014, Associate-1, not charged herein, held a Fifth Third account ending in 7664 for the business ASG, which listed Associate-1 as the sole signatory on the account.

15. On or about July 1, 2015, Associate-1's company, Association Equity Group ("AEG"), was awarded 130 shares of Plasma Igniter LLC ("PI") for services rendered to PI.

16. On or about April 11, 2017, American Plasma Energy Group, LLC ("APEG") was established as a Wyoming limited liability company.

17. On or about May 9, 2017, Heber Valley Capital, LLC ("HVC") was established as a Wyoming limited liability company.

18. On or about June 19, 2017, Associate-1 held a Fifth Third account ending in x0589 for the business Herber Valley Capital which listed Associate-1 as the sole signatory on the account.

3

19.     On or about August 4, 2017, Associate-1 changed the name on the Fifth Third account ending in x0589 from Herber Valley Capital to Heber Valley Capital ("HVC") and established himself as sole signatory on the account.

20.     In or around October 2017, AEG was established as a Wyoming Limited Liability Company.

21.     Investors R.G., S.M., S.W., J.P., J.A., SI LLC, D. B., D.C., D.O., and J.P. ("the Investors") were real people or entities, known to the grand jury, who resided in the Northern District of Ohio and invested money with Defendant.

B.  The Scheme to Defraud Investors

22.     In or around May 2016, Defendant began pitching an investment opportunity called Plasma Ignitor to potential investors in the Northern District of Ohio.  Defendant used the email address tomhissong3@gmail.com.

23.     The Plasma Ignitor investment was available to investors only through a purchase of an AEG share.  Defendant told the Investors that one AEG share was equal to one Plasma Ignitor share and that AEG was to have no operational function other than to hold shares and disburse member income based on anticipated payments by Plasma Ignitor to AEG.  Defendant used the terms Plasma Ignitor and AEG interchangeably when discussing the potential investment to the Investors.

24.     To purchase AEG stock, Defendant had the Investors issue a check written out to Defendant or Delta.  Defendant would then provide a portion of the investment money to Associate-1, who owned and operated AEG.  Defendant caused Associate-1 to issue and sign an AEG stock certificate that was delivered by Defendant to the corresponding Investor.

4

25.     Defendant caused Associate-1 to sign each stock certificate which showed the number of shares purchased by the corresponding Investor.  Defendant did not always provide a stock certificate to the Investors and as a result, not all the Investors had corresponding stock certificates for the number of shares they purchased through Defendant.

26.     The AEG stock prices were constantly fluctuating in price and ranged from $6,500 to $50,000 per share.  Defendant represented to the Investors that Plasma Ignitor was going to be receiving money from the sale of a license in the near future and, as a result, distributions would be made to the Investors.  As the anticipated payout date became closer, Defendant adjusted the price of the stock to match each Investor's budgetary constraints.  If an Investor could not come up with the suggested stock price, Defendant would offer the stock to the Investor at a lower price or give the Investor the opportunity to buy half a share.

27.     Defendant failed to disclose to Investors R.G., S.M., S.W., and J.P. that he would receive a commission on the sale of shares.

28.     From in or around May 2016 to in or around May 2018, Defendant sold $1,020,500 worth of AEG shares to the Investors.

   a.  Of these funds, Defendant deposited $1,020,500 into bank accounts he controlled in the following amounts from checks written by the following Investors:

      i.  J.A. - $40,000

         1.  August 3, 2017- Check #140 - $40,000

      ii.  SI, LLC - $565,000

         1.  April 11, 2017 – Check #1094 - $40,000

         2.  April 19, 2017 – Check #1104 - $40,000

5

      3. April 24, 2017 – Check #1109 - $100,000

      4. April 28, 2017 – Check #1112 - $75,000

      5. May 9, 2017 – Check #1116 - $25,000

      6. July 6, 2017 – Check #1163 - $40,000

      7. August 30, 2017 – Check #1205 - $50,000

      8. September 25, 2017 – Check #1218 - $50,000

      9. October 30, 2017 – Check #1258 - $50,000

      10. December 8, 2017 – Check #1297 - $50,000

      11. February 27, 2018 – Check #1377 - $15,000

      12. May 9, 2018 – Check #1442 - $30,000

iii. D.B. - $120,000

      1. December 2, 2016 – Check #314 - $30,000

      2. February 24, 2017 – Check #322 - $10,000

      3. February 24, 2017 – Check #323 - $10,000

      4. March 31, 2017 – Check #325 - $20,0000

      5. December 10, 2017 – Check #326 - $50,000

iv. D.C. - $10,000

      1. February 22, 2017 – Check #1342 - $10,000

v. R.G. - $30,000

      1. February 6, 2017 – Check #1916 – $30,000

vi. S.M. - $70,000

      1. February 24, 2017 – Check #1342 - $30,000

      2. July 7, 2017 – Check #1421 - $20,000

        3.   August 7, 2017 – Check #1428 - $10,000

        4.   August 15, 2017 – Check #1429 - $10,000

  vii.  D.O. - $6,700

        1.   October 31, 2016 – Check #1227 - $6,700

  viii.  J.P. - $51,300

        1.   May 13, 2016 – Check #2546 - $6,500

        2.   July 8, 2016 – Check #2576 - $6,800

        3.   September 2, 2016 – Check #2593 - $18,000

        4.   March 3, 2017 – Check #1001 - $20,000

  ix.  S.W. - $127,500

        1.   June 26, 2017 – Check #114 - $45,000

        2.   June 30, 2017 – Check #159 - $20,000

        3.   August 10, 2017 – Check #142 - $10,000

        4.   August 17, 2017 – Check #141 - $10,000

        5.   October 9, 2017 – Check #162 - $12,500

        6.   February 19, 2018 – Check #149 - $5,000

        7.   March 3, 2018 – Check #201 - $20,000

        8.   May 4, 2018 – Check #228 - $2,500

        9.   May 28, 2018 – Check #231 - $2,500

C.  Defendant's Personal Expenditures of the Investors' Money

29.    On or about July 8, 2016, Defendant caused J.P. to write check #2576 to Defendant for the purchase of AEG stock.  On or about July 8, 2016, Defendant deposited check #2576 into the Defendant's account.  From on or about July 8, 2016 to on or about July 21, 2016,

Defendant made or caused to be made a minimum of $5,179.59 worth of personal expenditures connected to J.P.'s investment money related to check #2576.

30.     On or about December 2, 2016, Defendant caused D.B. to write check #314 to Defendant for the purchase of AEG stock.  On or about December 2, 2016, Defendant deposited check #314 into the Defendant's account.  From on or about December 2, 2016 to on or about December 13, 2016, Defendant made or caused to be made a minimum of $11,942.53 worth of personal expenditures connected to D.B.'s investment money related to check #314.

31.     On or about February 6, 2017, Defendant caused R.G. wrote check #1916 to Defendant for the purchase of AEG stock.  On or about February 6, 2017 Defendant deposited check #1916 into the Defendant's account.  From on or about February 6, 2017 to on or about February 22, 2017, Defendant made or caused to be made a minimum of $18,833.69 worth of personal expenditures connected to R.G.'s investment money related to check #1916.

32.     From on or about February 23, 2017 to on or about March 3, 2017, Defendant deposited four checks related to investors D.B., D.C., and S.M. into the Defendant's account totaling $60,000.  From on about February 23, 2017 to on or about March 3, 2017 Defendant made or caused to be made a minimum of $26,895.39 worth of personal expenditures connected to the investors' investment money.

33.     On or about August 30, 2017, Defendant caused SI LLC to write check #1205 to Defendant for the purchase of AEG stock.  On August 30, 2017 Defendant deposited check #1205 into the Defendant's account.  From August 30, 2017 to September 1, 2017 Defendant made or caused to be made a minimum of $28,741.02 worth of personal expenditures connected to SI LLC's investment money related to check #1205.

8

34.     From on or about June 9, 2017 to on or about December 31, 2017, Defendant gambled at Jack Cleveland Casino on 56 separate occasions on 150 different games. Across these separate occasions, Defendant bet $112,870 dollars on various gambling tables and lost $81,716 on 114 tables and won $45,755 on 32 games.

35.     On 14 of the times that Defendant visited Jack Cleveland Casino, he withdrew money from the Ultron ATM located outside of the casino. Defendant used the Merrick credit card ending in x5779 to spend $6,476.86. Defendant made all Merrick credit card payments from the Huntington account ending in x1529.

D.  Overall Financial Breakdown of Defendant's Transactions

36.     From in or around April 2016 to in or around October 2017, Defendant provided Associate-1 with $416,350 through 27 transactions related to the sale of AEG stock. Defendant wrote each check to ASG, which Associate-1 deposited into the ASG Fifth Third account ending in x7644 that was Associate-1 controlled.

37.     After the sale of $1,020,500 to the Investors of AEG stock, Defendant retained control of $604,150 worth of investors' funds.

38.     Defendant caused Investor J.P. to be paid back $51,300 from J.P.'s investment.

39.     As a result of the foregoing scheme, the Investors suffered a loss of approximately $979,200.

COUNTS 1-5
(Wire Fraud, 18 U.S.C. § 1343)

The Grand Jury charges:

40.     The factual allegations of paragraphs 1 through 39 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

41.     From in or around May 2016 through in or around May 2018, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, THOMAS H. HISSONG, devised and intended to devise a scheme and artifice to defraud and obtain money, and property from investors, by means of false and fraudulent pretenses, representations, and promises.

42.     On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant, for the purpose of executing and attempting to execute the foregoing scheme and artifice, transmitted and caused to be transmitted, writings, signs, signals, pictures, and sounds by means of wire and radio communication, in interstate commerce, to wit: email communications, as described below, each representing a separate count of this Indictment:

| Count | Date | Description of Wire | Transmittal Information |
|-------|------|---------------------|------------------------|
| 1 | 2/2/2017 | Email from Defendant to the Investors: "Fyi update on plasma, first checks looking like 4-8 weeks out. The amount is $50-$100k each share." | Transmitted via email server located outside of Ohio |
| 2 | 5/17/2017 | Email from Defendant to the Investors: "Evening here's some proforma numbers on the distribution company for plasma." | Transmitted via email server located outside of Ohio |
| 3 | 12/7/2017 | Email from Defendant to the Investors: "FYI, making good progress finally!!" | Transmitted via email server located outside of Ohio |
| 4 | 3/7/2018 | Email from Defendant to the Investors: FYI, latest update. We're getting closer!! | Transmitted via email server located outside of Ohio |
| 5 | 7/17/2018 | Email from Defendant to the Investor J.A.: "Thursday at 4:30 Musketeers." | Transmitted via email server located outside of Ohio |

All in violation of Title 18, United States Code, Section 1343

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.